Sewall, J.
The verdict taken for the tenant in this cause, upon the issue of not guilty, is subject to the opinion of the Court upon the case reserved and reported; and the general question to be decided is, whether this verdict shall be set aside, and a new trial shall be granted, upon the motion of the demandant.
The evidence for the demandant is the last will of James Noble, in which a devise of the demanded premises is expressed; the con struction and effect of which is a principal question in the cause The seisin of William Lithgow, the father, and of Sarah Lithgow, their deaths, and the death of William Lithgow, the son, have not been contested; and it appears that the demandant is the second son of William and Sarah Lithgow, the devisees named in the will, and their eldest son and heir by the common law, at the death of Sarah, his mother.
The devise, relied on for the demandant, is in these words: “ I *151 give to Colonel William Liihgoio, and Sarah, his wife, and the heirs of her body, to be at the disposal of their father, William Lithgow, Esq., among his children, as he shall think proper, the westerly side or half of the stream,” &c., [describing the demanded premises,] “ on consideration that he, the said William Lithgow, or his heirs or assigns, pay my loving wife, yearly, during her natural life, every first day of June, twenty pounds lawful * money. And in case I should sell said estate, I order that the money I receive shall be paid to the said Lithgow, to be disposed of among his children as aforesaid, he, the said William Lithgow, or his heirs, giving my loving wife, &c., security to pay her twenty pounds yearly as aforesaid.”
The plea, by the tenant of the premises, that he is not guilty, seems to be an undertaking to maintain a title on his part; whatever might have been otherwise the right of the demandant. At least it may be said that, according to the report, this was the light in which the case was examined at the trial. The constructive effect and operation of the devise and gift in question, will be best considered, therefore, in examining the evidence exhibited at the trial, to prove a title in the tenant, and upon which this anomalous issue was found for him, that he had not been guilty of deforcing the demandant.
The evidence was, first, the deed of William Lithgow, the father^ made to the tenant, February 9, 1795, in consideration of 1018(7 money paid, or secured to be paid, to convey to him the demanded premises, to hold to him in fee simple, with warranty again s.lWÜ persons claiming by, from, or under, the grantor, or Sarah, his wife, and against the heirs, claiming as such, of the late Major Noble, the devisor, or any other conveyance made by or under him. And in this deed, Sarah Lithgow, the mother of the demandant, is made a party by these words at the close: “ I, the said William Lithgow, and Sarah, my wife, in token of her full, free, and entire relinquishment of all her right to said granted premises, have hereunto set our hands and seals,” &c.; and by her signing and sealing with her husband. This deed, having been duly executed in the presence of two subscribing witnesses, was acknowledged, both by William Lithgow and Sarah Lithgow, on the 24th of February, 1795, and duly registered on the 25th of the same month.
2. The mortgage deed of the tenant, made to the said William Lithgow, the father, in fee simple, to reconvey the premises * purchased of him, to be held as a collateral security, and conditioned for the payment of 900Z., part of the purchase money, according to the two promissory notes of the tenant. The mortgage deed was acknowledged and registered *152 at the same time, and corresponds in all respects with the deed of William and Sarah Lithgoiv.
3. The deed of Sarah Lithgow and James N. Lithgow, another son of William and Sarah Lithgow, made after the death of the father, dated November 18, 1799, acknowledged by her the next day, and by J. N. Lithgow, February 10, 1800, and on that day lcgistered.
In this deed there is a recital of the before-mentioned deeds. The first is called the deed of William Lithgow and his wife, Sarah Lithgow; and they are said to have granted, bargained, sold, and conveyed, the premises in controversy to James Kavenagh; and it is further recited, that James Kavenagh, and Matthew Cottrill, originally concerned with the said James Kavenagh in the purchase of the land aforesaid, have paid the sum mentioned in the condition of the said mortgage, in full satisfaction thereof; and in order that the said mortgage should be fully and absolutely discharged, and the tract of land aforesaid should he vested in the said Kavenagh and Cottrill, the said Sarah Lithgow and James N. Lithgow, also described as administrators of William. Lithgow, the father, deceased ; and in consideration of the sum mentioned in the condition of the mortgage deed aforesaid, paid by James Kavenagh and Matthew Cottrill, the receipt whereof is acknowledged by the said Sarah Lithgoiv and James N. Lithgow, they do for themselves, and in oieir capacities aforesaid, grant, release, remise, and forever quitclaim, to the said James Kavenagh and Matthew Cottrill, their heirs 4*4 assigns forever, all their, the grantors’, and all the said William Lithgow’s right, title, interest, and estate, in and to the following described tract of land, &c.; describing the demanded premises, as in the former deeds thereof. And there is annexed a covenant by Sarah Lithgoiv and James * N. Lithgow, for themselves, their heirs, executors, and administrators; and, in their capacities as administrators, to warrant and defend the afore-granted premises, &c., against all persons lawfully claiming from, by, or under, the grantors, or under William Lithgow, deceased.
If William Lithgow, the father, held the demanded premises as his own in fee simple, or by a less estate with a power of disposing of the same in fee simple, the tenant’s title is maintained under the first deed; The demandant’s title is also disproved by this construction of the devise; although the application of the evidence would have been more direct and precise upon the general issue of ne dona pas; but in that view of the case, the verdict ought to be confirmed, as the evidence must be considered as conclusive against the demandant.
*153 So, also, supposing a gift and tenancy in tail, the tenant is sufficiently defended, if, by the legal effect of the deeds offered in evidence on his part, or of either of them, the tenancy in tail was barred and defeated; for then the tenant is entitled to hold, against the issue of the tenant in tail, by force of the statute of this commonwealth, which provides for the barring of estates tail, &c., by deed.
In the argument for the tenant, his counsel have assumed the ground of a fee simple estate in William Lithgow, the father; or, at least, of a joint estate tail in him, and in Sarah Lithgow, the mother of the demandant; which, it is said, is conclusive against this action, as the demandant, in his writ and count, entitles himself as heir to his mother, Sarah Lithgow, only ; even if the estate tail has not been barred by the deeds relied on for the tenant; and, in either case, they contend that the verdict is to be confirmed.
The ground of a fee simple in William Lithgow is, we think, not tenable. The circumstance of a personal charge, upon the devisee, even of a sum in gross, is not conclusive. It will supply defects of expression, particularly where words of inheritance are omitted. The circumstance is * significant of an intentian to give a fee; because every testator is understood to intend the gift of some beneficial estate to his devisee; a mere life estate, when the devisee is charged, upon his acceptance of it, with the payment of a sum in gross, as a personal charge upon hir™ his heirs and assigns; and so, especially, when he is charged with an annual payment for the life of another, not depending at all the income of the estate devised ; this sort of calculation or bargain is never to be presumed, or admitted, upon a mere defect of expression in a last will. The law presumes a more reasonable and beneficial intention; and the devisee is understood to have a gift of the estate, subject to the charge, and without any nice estimate of the value and amount. (1)
In the case at bar, there is a concurrence of circumstances to favor and support the construction contended for on the part of the tenant. The common one of a professed intention of the testator to dispose of his whole estate, yet concluding the will without any devise of a reversion or remainder upon the estate in question, or any residuary devise, is not wanting. But there are other circumstances from which an intention to give a fee may be inferred.
The twenty pounds, to be paid the testator’s widow, is charged upon William Lithgow, and his heirs and assigns, to be continued during the life of the widow. If the estate should be sold by the *154 test! .tor, the proceeds are to be paid to William Lithgow, subject to the same charge. The power of distributing, either the land or the proceeds, among his children, is in itself an intimation of the unlimited nature of the gift, which the testator supposes himself to have made. There could be no doubt, I think,' if the decision depended upon a mere defect of words of inheritance, directly connected with the gift of this parcel of the testator’s real estate, that this defect would be amply supplied by a necessary and unavoidable consliuction. (a)
But the truth is, that to admit a devise in fee simple, we must neglect the operation of words used by the testator, * which have a plain, and obvious meaning, inconsistent with a gift in fee simple to William Lithgow alone. The devise is not only to him, but also to Sarah Lithgow, and to the heirs of her body; and there is no example or authority to justify a neglect of the testator’s words, unless the observance of them would violate some rule of law, and a construction, in which the words of the testator are in some measure disregarded, becomes necessary for the purpose of effectuating his general intention. (b)
It may be argued more satisfactorily, I think, that William and Sarah Lithgow took together an estate tail, limited to the heirs of their two bodies, or such heirs of the body of Sarah as were children of William. This interpretation is favored by the fact stated, mat, at the time of making the will by James Noble, William Lithgow and his wife, Sarah, the niece of the testator, had several childfspi then living. The limitation to the heirs of the body of Sarah is plainly and technically expressed; but then it is added, to be at the disposal of their father among his children. The intent of providing for the children of William, and the limitation to the heirs of the body of Sarah, are consistent, and entirely reconcilable, by construing the devise a gift in special tail to William and Sarah Lithgow, and the disposal among the children becomes an incident to the estate, and not a naked authority; and the charge upon this estate of the annuity to the testator’s widow, comports with the presumable intention of a beneficial interest created with the charge; for an estate tail differed very little from a fee simple, while the tenant had the power of barring it by a fine or recovery. And the *155 difference is still less, since the statute (2) of this commonwealth, extending the power of tenants in tail, and subjecting their estates to the payment of their debts.
A gift to the husband and to his wife, and to the heirs of the body of the wife by the husband begotten, is one of the cases put by Littleton; (3) and he determines it, that there the wife hath an estate in special tail, and the husband *but for term of life. A gift to the husband and wife, and to the heirs which the husband shall beget upon the body of the wife, is another case put by Littleton, in which he says both of them have an estate tail, because this word heirs is not limited to the one more than the other; and Lord Coke says, if it incline no more to the one than to the other, then both do take. The words of limitation do not incline so equally, in the case at bar, as of themselves to make the gift in question an estate tail in William and Sarah Lithgow; and to give them that constructive effect, we must resort to an implication from circumstances, and from other expressions, which make this construction necessary, in effectuating the general intent of the testator; and this is sometimes permitted in cases arising upon last wills. In a case reported by Sir William Blackstone, (4) we have an example of circumstances twisted together, as it is expressed in the report, to interpret a devise to be in fee, which, on the face of it, is only for life. i
It would not, however, be a necessary consequence of this con struction, if it should be adopted, that the verdict is to be confirmed. For although the count in the demandant’s writ would be thereby disproved, yet a defence to this purpose, if this construction were given to the devise, would be only turning the demandant over to another action. And besides, upon granting a new trial, it would be in course, supposing it requisite to come at the justice of the case, to permit an amendment of this formal defect in the writ, exacting suitable terms as to costs. And upon the whole, we have not found it necessary, in deciding this cause, to settle definitely the construction, in this respect, of the devise in question.
The terms of the devise in question are, perhaps, too explicit, considering the ancient technical rule which interprets them, to receive any modification from accompanying expressions and circumstances. In this view of the subject, the case must be further examined upon the construction that a fee tail vested by the devise in Sarah Lithgow, *her husband having, in his own right, a term for his own life, and a seisin with *156 her in her right, of the tenancy in tail, during their joint lives; and then the demandant’s title, as stated in his formedon, is in no part disproved, (c)
Whether the verdict, taken in this case, shall be set aside, depends, then, upon the question of the sufficiency of the tenant’s title; supposing a gift in tail by the will of James Noble, either to William, and Sarah Lithgow, and the heirs of their two bodies; or a gift to William Lithgow for life, and to his wife, Sarah, in fee tail general. And the decision of this question must be governed by the statute of this commonwealth; for there is no pretence of a conveyance, in this case, which could operate at common law to bar the title of the heir in tail, coming within the form of the gift, as the demandant does, whichever construction of the gift, as to the limitation of it, shall be adopted. As to the power in W. Lithgow, upon which there has been some reliance in the argument, if we suppose it an independent authority, and not an incident to his estate, as it was not, if he had only a term for life, it must be understood, we think, a power to distribute among the children the land itself, and not the proceeds of it upon a sale. A distribution of the latter kind is permitted only in the event supposed by the will, of a sale by the testator in his lifetime. There is no evidence, therefore, of a mere power which extended to a sale of the land by i W. Lithgow, and he does not appear, in his deed to the tenant, to have contemplated the execution of an authority, derived from the will, for the purpose suggested, or for any other purpose.
■ We have, in England, an example of a statute provision for the docking or barring of estates tail; and it may be useful to take notice of some decisions in which the operation of that statute, in cases somewhat analogous to the present, has been determined.
*157 By the statute of 32 H. 8, c. 36, fines, with proclamations by persons of full age, of lands, &c., before such fines * levied, entailed to the person levying the same, or any of his ancestors, in possession, reversion, remainder, or use, shall be a sufficient bar and discharge forever against them, or any of their heirs claiming only by such entail. (5)
Therefore, if tenant in tail levies a fine with proclamations of lands to him entailed, the issue in tail shall be barred by it; for the statute makes it a bar to the issue expressly. And a fine by tenant in tail is as complete a bar to the issue, as a feoffment by tenant in fee simple is to his issue. (6)
So, if husband and wife be tenants in tail, and the husband alone levies a fine, it bars the issue in tail; for he claims as heir to the bodies of both. (7) And notwithstanding an entry by the wife to avoid the fine, the issue is barred after her death. (8)
The statute of this commonwealth provides a method of barring estates tail inlands; and since the 2d day of March, 1792, it has been lawful for any person, seised and possessed of lands, &.C., in fee tail, being of full age, by deed duly executed before two or more credible subscribing witnesses^ acknowledged, &c., and recorded, &c., for a good and valuable consideration, bond fide, to give, grant, sell, and convey, such lands, &c., or any part thereof, in fee simple, &c., and such deed, so executed, &c.., shall be sufficient and effectual in law to bar all estates tail in sucu lands, &.C., and all right and title of the tenant or tenants in tail, and their issue in tail, and of all others claiming under and by force of the original gift, &c., and all reversions, &c., and to pass and to vest the absolute inheritance in fee simple of such lands, &.C., in such purchasers or grantees, without any fine, &c.
A deed by a tenant in tail, executed as this statute prescribes, is as sufficient and effectual to convey a fee simple, as the deed of a tenant in fee simple would be; and by the operation of this statute, the right, or title, or claims expectant, of the issue in tail, of the remainder man and reversioner, are in the power of the tenant in tail to be * barred and discharged forever, without a fine, or recovery, or any other legal ceremony.
The objection, on the part of the demandant, to the first deed, offered and relied upon by the tenant in the case at bar, is, that Sarah Lithgow is not the grantor therein, nor a party to the consideration paid by the purchaser. That deed, having been executed *158 and acknowledged by her, as well as her husband, in the manner prescribed by the statute, is in form, at least, if not effectually, the deed of the tenant in tail, having the seisin and possession whether the gift be construed as creating a tenancy in tail in the husband and wife, or in the wife only.
Upon the construction proposed, of a gift to the husband and wife, and the heirs of their two bodies, there can be no difficulty, I think, in admitting the effect of this deed to bar the issue in tail, even adopting the supposition contended for on behalf of the demandant, that the wife was not a party to the deed, as a grantor of the lands conveyed, or as a party to the consideration paid by the purchaser. (9) This, in the authority cited, is the operation of a fine levied by the husband alone; not only without the consent of the wife, but where she survives and expresses her dissent by an entry to avoid the fine. Although she can thereby resume her own estate, yet, as to the issue in tail, who must entitle himself by both ancestors, the fine by the husband alone is a bar and discharge of the entail, after the death of the wife. And this, I think, would be the operation of the deed of the husband alone, where the issue in tail must, according to the gift, entitle himself from his father as well as his mother. And this legal operation of the deed by the husband alone would be enforced, or not impeded, by the consent of the wife, expressed by her signing and sealing the same deed.
[If the husband and wife be tenants in tail, it seems the deed of the nusband alone, conformably to the statute, will bar the entail. — Ed]
If the deed in question had been executed in the same manner by two joint-tenants of a fee tail or fee simple, each capable alone of making a grant or conveyance of his moiety, or by the tenant of the, freehold and the remainder * man in fee, each alike capable as to his respective interests, I can have no doubt that the deed would be considered effectual against both the parties, notwithstanding the formal defect of expression; their intent being apparent, and their consent to an entire disposal of their estate and interest being necessarily implied from their joining in the execution of a deed in which a convey anee of the whole is expressed.
The case of a conveyance by a feme covert, joining with her husband for the disposal of her estate, is somewhat different, because of her legal incapacities. At common law, a feme covert is incapacitated to make any deed or conveyance effectual against herself or her heirs, without the concurrence and agency of her *159 husband. Husband and wife can convey lands and real estate, of which they are seised in her right, only by matter of record, as by a fine and recovery; and a married woman, entitled to dower in her husband’s lands, is only to be barred thereof by some act of record; and in a conveyance by record, a married woman is to be examined as to her freedom from the control of her husband, and her entire consent in the transaction. (10)
In England, however, there are instances of local customs which have been allowed to prevail against these principles of the common law. The deeds of husband and wife are, by particular custom, in some places, as effectual as to lands holden in her right, as conveyances by record are at common law.
In this commonwealth, a like usage has prevailed from the earliest times. A conveyance by husband and wife, of lands holden in her right, may be by deed ; and this mode of conveyance is now to be ranked among the common assurances which are not to be questioned or disturbed. And by the statute relative to deeds and conveyances, there is an implied sanction given by the legislature to this peculiar custom; at least so far as a woman’s right of dower in her husband’s estate is concerned. I allude to *t.he provision that a woman, who had not joined with a husband in a sale or mortgage, is not to be barred of her dower, where not otherwise lawfully excluded or barred. For this purpose, her assent, by joining with her husband in the deed, is sufficient; but in a sale or grant of real estate, where the title proceeds from her, the husband and wife are as one grantor. They act together in her right; his concurrence being essential to the validity of the conveyance; and she is to be joined with him in the operative words and stipulations of the conveyance. The husband alone has no right or authority to bargain and transfer the lands of the wife, except so far as his deed may operate as to his own legal interest, or as an estoppel against himself, during his life.
In the case at bar, the conveyance, according to the first deed, is by the husband alone. The title in fee simple is granted, bargained, and sold, by him; and her subsequent consent or relinquishment of her right, is a consent in his conveyance; but she cannot be said to have joined with him in conveying a title which proceeds from her. We think it would tie a dangerous precedent, to establish a deed, expressed in this manner, as a conveyance by husband and wife, of lands holden by them in her right. And if this objection would be important where the property conveyed *160 was in the wife absolutely, it has a peculiar weight where her interest was of a limited nature, and her power of conveying absolutely, if it existed at all, was the effect of a recent statute; and the title of the purchaser, as it respects the issue in tail, is to be considered as a kind of statute title.
The issue in tail does not take by descent only, but by the statute de donis, as well as by descent, and is in per form-am doni. (11)
The effect of that statute has been, in a degree, abrogated, within this commonwealth, by the recent statute, which subjects an estate tail to the absolute disposition of the immediate tenant in tail, and to the payment of his * debts. But it may deserve some consideration, whether the form of conveying hitherto in use for married women, as to their estates in fee simple, rendered effectual by a peculiar usage against general principles, is also, under this statute provision for barring estates tail, an assurance of title, after the death of the husband, against the wife and her issue claiming per formam doni. suc*1 a casu, the clear and full intention of the tenant in tail, to convey this peculiar interest, ought to be apparent; and perhaps it ought to appear that, in the disposal of an estate given to a married woman in a qualified manner, she acts without any unsuitable bias or influence; and to this purpose, the interest of heirs, and those entitled to remainders and reversions upon entailed estates, may be considered as protected still by the principles of the common law.
wh-'the$the w:fe byjoinhusband 'Vn a deed, can b-r her esEif.] ~~
I am not disposed to lay much stress on the circumstance that the consideration of the bargain was paid to the husband, and acknowledged by him. Money paid to a married woman is, in legal contemplation, always paid to the husband.
Unless we decide, therefore, the construction and effect of the devise in question, and consider W. Lithgow entitled in fee. tail, it will be necessary further to pursue the inquiry, and 1o ascertain the effect of the second deed, made by Sarah Lithgow, after the death of her husband, to the tenant and his partner Cottrill. The recital in this deed is, as far as it goes, evidence of the intention of the parties, and of Sarah Lithgow, particularly, in the former deed. But it will not, I think, remedy the defects of that deed, so far as to make her a grantor with her husband, and make that a sufficient assurance of title against her issue, if W. Lithgow, the father, took only a life estate.
The tenant contends, however, that this last deed is of itself a *161 grant and conveyance of the demanded premises, sufficient to bar the issue in tail claiming under Sarah Lithgow.
The objections to this effect and operation of the deed are, that this was not the apparent intention of Sarah Lithgow *in joining with her son, James N. Lithgow, in that deed; that they acted in it as administrators, for the purpose of discharging the existing mortgage upon the premises made to their intestate ; that no new consideration was given, and no consideration, paid or payable to Sarah Lithgow, is there acknowledged, but as she was administratrix upon her husband’s estate; and that the warranty for herself and her heirs, expressed therein, is not to be made effectual by the supposition of assets descending to this heir in tail from his mother. And if this deed had been confined to a release of the mortgage arising out of the former conveyance, it would afford very little or no aid to the title of the tenant. He contends, however, that other intentions are expressed, and that a more enlarged exposition is not only justified, but required, from the tenor of the deed itself.
The grantors in the second deed, as it has been called, certainly had in view some other purposes than a mere discharge of the mortgage. A new grantee or purchaser is introduced, not a party to the former conveyance, or to the mortgage proposed to be released. It is said, in the recital, that he was concerned in the purchase, and that he is a party to the consideration money paid, and to be paid, thereon. The intentions of the parties, in the second deed, or the occasion of the deed, was declared to be in order that the said mortgage should be fully and absolutely discharged, and the tract of land, aforesaid should be vested in the said Kavenagh and Cottril. And although Sarah Lithgow and Jam.es N. Lithgow describe themselves as administrators, in which capacity they had authority to release the mortgage, yet they employ words which import a further and a different intention. For themselves personally, as well as in their recited capacities, they undertake to grant, release, remise, and forever quitclaim, to the said Kavenagh and Cottrill, and their heirs and assigns forever, all their, as well as all the said William Lithgow’s right, title, interest, and estate, in and to the land afterwards in the *same deed particularly described. And the covenant annexed to this conveyance is for themselves, their heirs, executors, and administrators, as well as in their capacities of administrators to William Lithgow, and it is a warranty against all lawful claims from, by, or under themselves, or under him.
These circumstances considered, it must be allowed that this deed has very much the appearance of an intended confirmation in *162 fee simple of the title of the tenant, to him and his assignee. And it is of some weight, in a question of this nature, that this is the only honest purpose which Sarah Lithgow could entertain, in connection with the receipt of the consideration money due upon the bargain made with William Lithgow in his lifetime; that is, if the supposed defects of the former conveyance had been then discovered. And that they had been, may be inferred, with some probability, from the recital and clauses introduced in this deed, which are wholly impertinent to a release of a mortgage ; and which amount, at least, to an explicit disclaimer and extinguishment of any title which might be supposed to be remaining in Sarah Lithgow in her own right. If the estate in question had been the estate of Sarah Lithgow in her own right in fee simple, and a bargain and sale of it had been executed, and a deed given of it by her husband alone in his lifetime, and she, surviving him, had in this manner confirmed the title to the bargainee, the conveyance would have been effectual against her and her heirs. (12)
If there is any doubt upon the effect of this deed in the case ;;t bar, it must arise altogether from the peculiar nature of the title of Sarah Lithgow as a tenant in tail, and upon the questions which may be made, whether this conveyance is in conformity to the statute which enables a tenant in tail to convey in fee simple. The only requisites of the statute, upon which any doubt in this respect has arisen, are that of a valuable consideration, — for in this case there is no pretence of any other,—and that of the * condition of the estate to be conveyed, as to the seisin and possession of the tenant in tail.
In point of fact, the objection as to the consideration is well grounded. The consideration in money, acknowledged by this deed, arose altogether upon the former bargain between William Lithgow and the tenant, and was received by Sarah Lithgow and James N. Lithgow as administrators. But it is also true, that the sums of money, paid by the tenant and his partner upon their purchase, were a valuable consideration, as proceeding from them, and as forming their part of the contract. And it is a valuable consideration to the bargainor, if paid to her, or to a third person with her consent and appointment; and, in this respect, her subsequent assent is equivalent to a previous command, or- her admission that the consideration in money, for which her husband contracted, shall operate as a valuable consideration to herself, when paid by her grantees, makes it in every sense a sufficient consideration to give effect to her conveyance.
*163 The requisite of the statute, of a valuable consideration, is not restrictive in this respect. A valuable consideration is requireu, (d) and the conveyance must be bona Jiae; but a valuable consideration, for the grant and sale of a fee tail estate, which is to vest in fee simple in the purchaser, is not distinguished from a valuable consideration in any other conveyance, so as to restrict it to the immediate use of the tenant in tail; and as between the seller and purchaser, the consideration agreed upon is a valuable consideration, even if inadequate compared with any supposed estimate of the premises conveyed, and notwithstanding it may be rendered of little or no value to the immediate tenant in tail by her disposition of it..
a valuable consideration ; but it is not essential that the consideration should be adequate to the value of the prein ises convey ed. — Ed.] r. anee to bar ^gtbg¿^ pj^ an<j for ’ ’'
The principal difficulty which has occurred to me, in giving to this last conveyance the operation contended for by the tenant, is the requisite of the statute implied in the words, that it shall be lawful for any person, &c., seised * and, possessed of any lands, &c., in fee tail, &c., by a deed duly executed, &c., to give, grant, sell, &c., in fee simple; — whether, in the case at bar, Sarah Lithgow had the possession as well as seisin of the estate conveyed, so as to be, in this respect, within the description intended by the legislature, of the tenant in tail, who is authorized to convey in fee simple. Her deed of the demanded premises, made to any other person than the tenant or his assignee, would have been, under all the circumstances of this case, ineffectual at the time the deed in question was made. Against him, if she had the seisin of the right, she had not that possession of the lands conveyed, which the law requires and makes essential to a good and lawful deed. And the deed in question became effectual as her conveyance, by virtue of the possession rather of the bargainee than of the bargainor.
— Ed.] It seems the words 11 seised and refer to an estate tail in possession, as distinguished from an estate tail in
The words cited from the statute restrict the authority of a tenant in tail to the case of an estate tail in possession, as distinguished from an estate tail in expectancy. A fine may be levied by the issue in tail during the life of the tenant in tail, so as to bar himself and his issue. And a fine may be levied of an estate tail in reversion or remainder, and not in possession, so as to bar the issue of the remainder man or reversioner. (13)
*164 deed be in other respects effectual, it is sufficient if there be no adverse possession, although the grantor be not actually in possession.— Ed.] [If the
But a deed given under the same circumstances would not operate to bar the issue in tail, by the provisions of the statute of this commonwealth.
This construction is obvious, and seems to be within the purpose of the legislature. But it is difficult to conceive of any other intent in this requisite of the statute; unless it may be a specification of what constitutes a good and lawful deed, to prevent a construction, which might have been contended for, that this statute gave effect in the case of a tenant in tail to a deed not lawful, and without effect in any other case. But when the deed, under the actual circumstances of the transaction, is effectual and lawful, as between these parties, there being no adverse possession * to impede its operation, is a deed for a valuable and adequate consideration actually paid by the bargainee,in a manner which the bargainor has seen fit to accept, and to acknowledge as a consideration to herself, and is made in fee simple by the tenant of a fee tail estate, vested as to the right, at least, in possession, and not in expectancy ; there seems to be no sufficient reason, derived either from general principles, or from the statute enacted on this subject, against the operation of such a deed according to the fair intentions of the parties thereto. And as to their intentions, the evidence of them, in this and the former deed, is clear and explicit; and justice requires us to give effect to" them, if it may be done without violating the rules established respecting the- titles and transfer of real estates.
Upon the whole, after much consideration of the subject, we are all of opinion, without going into the question of the effect of the warranties, that the operation of the second deed is, to declare and confirm the intentions of the parties in the first deed; and that, under all the circumstances of this case, the second deed effectually conveyed the demanded premises to the tenant and his partner, to hold in fee simple, and is sufficient, according to the provisions of the statute, to bar the issue in tail claiming under Sarah Lithgow, even if, upon the construction of the devise in question, the first deed — that by William Lithgow, the father — was not effectual to the same purpose.

Judgment on the verdict

 Willes's Rep. 138, Fagge vs. Heaseman. Cowp. 410, Denn vs. Shenton.

 [This rule of construction only applies where the words are general, and not where there is an express devise for life or in tail.— Doe, d. Burdett, vs. Wright, 2 Barn, & Ald. 710. — Doe, d. Bowes, vs. Blackett, Cowp.235.— Denn vs. Slater, 5 Durnf. & East. 335.—Dutton vs. Engram, Cro. Jac. 427. — Denn, d. Sheering, vs. Shenton, Cowp. 410. — Ed.]

 Wright vs. Jesson, 2 Bligh. 1. — The technical meaning will be given to the words u heirs of the body,” unless the intent of the testator appears so plainly to the contrary that nobody can misunderstand it. — Poole vs. Poole, 3 B. & P. 627. — Ed.]

 1791, c. 60.

 § 28, Co. Lit. 26.

 Brampston vs. Holiday & Al., 1 W. Black. 535.

 [In case of a gift to a man and his wife generally, or for their lives, and to the heirs of the husband, or wife, alone, and not of the husband and wife ; or of one of them by the other of them; by the gift to the husband and wife, they jointly, as between themselves, or rather by entireties, have an estate for their lives, and the limitation to. the heirs will vest an estate tail in the ancestor with reference to whom the term heirs is used. And although the limitation to the heirs prescribes that these heirs shall be the issue of the bodies of the husband and wife, yet if they are to be the heirs of one of these persons to be begotten between them, and are not to be the heirs of both of thorn, then the gift, so far as it comes within the scope of the present observations, will receive the same construction as a gift to a man and his wife, and the heirs of one of them of his or her body, with a specification of the person by whom, or on whose body, the heir shall be begotten. — 2 Preston on Estates, 444. — In conformity with this doctrine, it has been held that where an estate was limited by deed to husband and wife, and the heirs on the body of the wife by the husband tobe begotten, both took an estate tail; but if the remainder be limited to the heirs of the body of the wife by the husband to be begotten, the estate tail vests in the wife only. — Denn vs. Gillot, 2 D.& E. 431. And see Gossage vs. Taylor, Stye, 325. — Frogmorton vs. Wharry, 2 Bl 728. — 3 Wils. 125—144. — Aistrop vs. Aistrop, 2 Bl. 1228. — Alpass vs. Walkins, 8 D & E. 516. — Powell on Devises, by Jarman, vol. ii. pp. 436, 440, 441. — Ed.]

 Com. Dig. Estates, B. 25.

 Raym. 359. — 3 Co. 84.— Cro. Eliz. 610. — 1 Lev. 85. — 2 Lev. 37.

 Dyer, 351. — 9 Co. 140. — Bendl. 257. — Dalt. 50. — 1 And. 39.

 Hob. 257,259, 260. — 2 Inst. 681, 682

 Shep. Touch, c. 2, p. 24

 2 Inst. 673. —10 Co. 43.

 Com. Dig. Estates, B. 7.

 Shep. Touch. 309, c. lo.

 [It is sufficient, if there be a good or valuable consideration. — Wheelwright vs. Wheelwright 2 Mass. Rep. 447.— Williams vs. Hitchborn 4 Mass. Rep. 160. But it is not sufficient that the deed purports to have been made on such, consideration. — Soule vs. Soule, 5 Mass. Rep 61. — Ed.]

 3 Co 84, 51, 90. — Raym. 359.